**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

DENNY RAY HUNNICUTT,

      Defendant - Appellant.

No. 97-5087

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 96-CR-87-BU)

---

C.W. Hack of Hack & Lundy, P.A., Tulsa, Oklahoma, for Defendant-Appellant.

Allen J. Litchfield, Assistant United States Attorney (Stephen C. Lewis, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before PORFILIO, TACHA, and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

---

      Defendant-appellant Denny Ray Hunnicutt was convicted of conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and conspiracy to use or carry firearms during and in relation to the commission of a drug trafficking crime, in violation of 21

U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He now appeals the district court's denial of his motion to suppress all searches and seizures. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

Background

After being indicted by a grand jury, Mr. Hunnicutt moved to suppress various evidence, and his motion was denied. He conditionally pleaded guilty to the two counts referred to above and reserved the right to appeal the denial of his suppression motion. The following facts are recounted in the light most favorable to the government. See United States v. Villa-Chaparro, 115 F.3d 797, 800-01 (10th Cir.), cert. denied, 118 S. Ct. 326 (1997).

While on patrol during the night of January 7, 1996, Officer Raines of the Glenpool, Oklahoma Police Department turned onto Highway 75 behind a silver BMW driven by Mr. Hunnicutt, who was accompanied by two passengers. Over the course of four or five miles, the officer saw the vehicle weave four or five times across the shoulder line and the center line. He suspected the driver might be driving under the influence of alcohol and decided to stop the vehicle. He turned on the video camcorder in his patrol car and the wireless microphone on his body which recorded the subsequent events. He then turned on his overhead emergency lights. The vehicle pulled off to the shoulder but took about ten to twelve seconds over the course of a half of a mile to slow to a stop.

Mr. Hunnicutt produced a driver's license, but had no insurance verification. The officer asked Mr. Hunnicutt to accompany him to his patrol car where he ran a computer check on the vehicle and driver's license. In response to questioning, he told the officer he was taking a passenger to Muskogee. The computer checks showed the person from whom Mr. Hunnicutt claimed to be purchasing the vehicle was not the registered owner, and Mr. Hunnicutt's license was suspended. In response to further questioning, he denied there were any illegal substances or weapons in the car. He was then arrested for driving under suspension.

Mr. Hunnicutt refused to consent to a search of the car, and a canine unit was requested. A backup officer who had arrived on the scene informed Officer Raines that the passengers appeared extremely nervous and that one of the passengers said they were going to Morris, Oklahoma. Approximately fifteen minutes later, the canine unit arrived. The passengers denied possession of any illegal weapons or contraband; however, upon exiting the vehicle, one of the passengers handed the officer a brown bag, in which he found what appeared to be a large quantity of methamphetamine.

The dog did not alert to the interior or exterior of the car, but did alert to the bag. A search of the car revealed a packet of bindle bags underneath the driver's seat, a banana clip of .22 caliber shells on the console, and financial

records. Upon viewing its contents, the backup officer decided to search the trunk at the police station. The officer continued searching the passenger compartment and found a knife between the seats and a loaded .44 magnum revolver on the console. At the police station, officers recovered several additional weapons, narcotics, digital scales, ammunition, drug dealing records, a police scanner, and used and unused syringes.

Mr. Hunnicutt appeals the denial of his suppression motion, arguing that (1) the initial stop was unjustified, (2) further questioning about guns and drugs was unsupported by reasonable suspicion, (3) the canine sniff was beyond the scope of the stop, (4) the canine sniff was outside the purposes of a search incident to arrest, (5) his refusal to consent to a search should not have been considered in determining reasonable suspicion or probable cause, (6) impoundment was improper, and (7) any inventory search was not done pursuant to standardized procedures.

Discussion

When reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. See United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995), cert. denied, 116 S. Ct. 2529 (1996). Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the

evidence are within the province of the district court. See Villa-Chaparro, 115 F.3d at 801. On appeal of a denial of a suppression motion, we consider the totality of the circumstances and view the evidence in the light most favorable to the government. Villa-Chaparro, 115 F.3d at 800-01. The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. See id.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). A routine traffic stop, however, is more analogous to an investigative detention than a custodial arrest. See United States v. Jones, 44 F.3d 860, 871 (10th Cir. 1995). We therefore analyze such stops under the principles developed for investigative detentions set forth in Terry v. Ohio, 392 U.S. 1 (1968). See Botero-Ospina, 71 F.3d at 786. To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first "whether the officer's action was justified at its inception," and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.

## A. The Initial Stop

Mr. Hunnicutt argues the initial stop violated the Fourth Amendment. He asserts that there was never any traffic violation and that the allegation of improper use of lane was a pretext for searching the vehicle. Our cases make clear that the government need not show a violation actually occurred to justify an initial traffic stop. An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. See Botero-Ospina, 71 F.3d at 787. It is irrelevant that the officer may have had other subjective motives for stopping the vehicle. See id.; accord Whren v. United States, 116 S. Ct. 1769, 1773-77 (1996). Our sole inquiry is whether the particular officer had reasonable suspicion that the particular motorist violated "any . . . of the multitude of applicable traffic and equipment regulations" of the jurisdiction. Prouse, 440 U.S. at 661.

Oklahoma law allows driving in the center lane for certain purposes and under certain circumstances, none of which is consistent with weaving into and out of the center lane. See Okla. Stat. Ann. tit. 47, § 11-309.2 (West 1988). Mr. Hunnicutt argues that he never crossed into the center lane, but the district court's contrary finding is not clearly erroneous given the officer's testimony.

The district court also found that the vehicle weaved across the shoulder

- 6 -

line three or four times, but Mr. Hunnicutt contends that the testimony on this point was not credible because § 11-309.2 was cited in the police report, and not § 11-309.1, which governs crossing the shoulder line. See id. § 11-309.1. The officer testified that he stopped Mr. Hunnicutt for "improper use of lane," which encompasses crossing the center line and the shoulder line. Thus, the officer had a reasonable articulable suspicion that Mr. Hunnicutt had violated statutes governing the proper use of lanes. Alternatively, after witnessing his driving conduct, the officer had a reasonable articulable suspicion that Mr. Hunnicutt was driving under the influence of alcohol. See id. § 11-902. The initial stop therefore did not offend the Fourth Amendment.

## B.  Further Detention and Questioning

Mr. Hunnicutt argues that questioning about guns or drugs was "far outside" the scope of the initial stop, and without any subsequent events to lead a reasonable officer to believe that a gun or drug violation was occurring. An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. See United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir.), cert. denied, 511 U.S. 1095 (1994). The investigative detention usually must "last no longer than is necessary to effectuate the purpose of the stop," and "[t]he scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491,

500 (1983).

Lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. See United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993). Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter. See Gonzalez-Lerma, 14 F.3d at 1483. The officer had not returned Mr. Hunnicutt's license at the time he asked about guns and drugs, so further questioning unrelated to the initial stop must have been supported by an objectively reasonable suspicion of illegal activity. See id.; United States v. McKneely, 6 F.3d 1447, 1451 (10th Cir. 1993) (holding that encounter cannot become consensual while officer retains driver's documents).

A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity. Among those factors that have justified further questioning are having no proof of ownership of the vehicle, having no proof of authority to operate the vehicle, and inconsistent statements about destination. See United States v. Jones, 44 F.3d 860, 872 (10th Cir. 1995); Gonzalez-Lerma, 14 F.3d at 1483-84; United States v. Pena, 920 F.2d 1509, 1514 (10th Cir. 1990), cert. denied, 501 U.S. 1207 (1991). Also among those are driving

with a suspended license, see Jones, 44 F.3d at 872, and reluctance to stop, see id.; Villa-Chaparro 115 F.3d at 802; United States v. Walraven, 892 F.2d 972, 975 (10th Cir. 1989). In particular, the inability to offer proof of ownership or authorization to operate the vehicle has figured prominently in many of our cases upholding further questioning. See United States v. Horn, 970 F.2d 728, 732 (10th Cir. 1992); United States v. Turner, 928 F.2d 956, 959 (10th Cir.), cert. denied, 502 U.S. 881 (1991); United States v. Arango, 912 F.2d 441, 447 (10th Cir. 1990), cert. denied, 499 U.S. 924 (1991); see also United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994) (The "defining characteristic of our traffic stop jurisprudence is the defendant's lack of . . . some . . . indicia of proof to lawfully operate and possess the vehicle in question, thus giving rise to objectively reasonable suspicion that the vehicle may be stolen.")

When the officer asked Mr. Hunnicutt about guns and drugs, he was confronted with a driver who had no proof he was the vehicle's owner, no registration, and no proof he was otherwise authorized to operate the vehicle. The person he claimed to have purchased the vehicle from was not the registered owner. He failed to stop promptly, which led the officer to wonder whether the occupants were stuffing things under the seats; and after the stop, the passengers repeatedly moved back and forth and leaned over. To understate, we disagree with Mr. Hunnicutt's contention that no subsequent events justified further

questioning. Police officers need not close their eyes to suspicious circumstances. See United States v. Espinosa, 782 F.2d 888, 891 (10th Cir. 1986). Under the totality of the circumstances, Mr. Hunnicutt's further detention and questioning were supported by a reasonable articulable suspicion of illegal activity.[1] See Turner, 928 F.2d at 959 (holding reasonable suspicion "sufficient to permit the single question about the presence of drugs or weapons").

## C. The Canine Sniff

Mr. Hunnicutt maintains that the canine sniff was beyond the scope of any justified intrusion. A canine sniff itself does not implicate Fourth Amendment rights because of the limited information it provides and its minimal intrusiveness. See United States v. Place, 462 U.S. 696, 707 (1983). Thus, we have held that a canine sniff of an already legitimately detained automobile is not a "search" within the meaning of the Fourth Amendment. See United States v. Morales-Zamora, 914 F.2d 200, 203 (10th Cir. 1990). Likewise, detention of the

---

[1]    We do not consider in our assessment of reasonable suspicion, as the district court did, the driver's suspended license or lack of verification of insurance. Although these factors support reasonable suspicion, see Jones, 44 F.3d at 872; United States v. Pereira-Munoz, 59 F.3d 788, 791-92 (8th Cir. 1995), the officer expressly testified at the suppression hearing that he did not rely on them. See III R. at 30. In the case today, ample other factors were present, within the officer's awareness, and articulated by him at the hearing. We therefore leave for another day the question of whether factors not within the officer's awareness or not relied upon by him may be considered by a reviewing court.

driver at the scene to accomplish a canine sniff is generally reasonable where the driver is already under lawful arrest. See United States v. Fiala, 929 F.2d 285, 288 (7th Cir. 1991) (holding one and one-half hour wait for dog reasonable because defendant was already under lawful arrest). Arrest "is inevitably accompanied by future interference with the individual's freedom of movement." Terry, 392 U.S. at 26.

Based on these legal principles, and under the circumstances of this case, no individualized reasonable suspicion of criminal activity was required to call the canine unit. The officers were already justified in impounding the vehicle because no one had indicia of authority to drive it or verification of insurance. See South Dakota v. Opperman, 428 U.S. 364, 368-69 (1976). Mr. Hunnicutt was already under lawful arrest for driving under suspension, and the wait for the dog was only fifteen minutes. Alternatively, the sniff and detention to accomplish it were supported by reasonable suspicion based on the factors discussed above, and the additional factors the officer testified were within his awareness at that time: the extreme nervousness of the passengers and the inconsistent statements about destination. See United States v. Kopp, 45 F.3d 1450, 1453-54 (10th Cir.), cert. denied, 115 S. Ct. 1721 (1995); Soto, 988 F.2d 1556 & n.4 (stating that although nervousness of either the driver or passenger itself is insufficient to create reasonable suspicion, there are, no doubt, circumstances in which nervousness

- 11 -

contributes to reasonable suspicion); <u>United States v. Zukas</u>, 843 F.2d 179, 182-83 (5th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1019 (1989) (holding plane passenger's nervousness contributed to reasonable suspicion). This analysis of the propriety of the canine sniff renders moot Mr. Hunnicutt's argument that it was beyond the purposes of a search incident to arrest.

### D. Refusal to Consent to Search

Mr. Hunnicutt asserts that his refusal to consent to search should not have been used to contribute to the officer's suspicions. We agree, but conclude the sniff was independently justified for the reasons discussed above, and that the later searching was independently supported by probable cause after one of the passengers handed the officer a large quantity of what appeared to be methamphetamine, to which the trained drug dog alerted. <u>See</u> <u>Michigan v. Thomas</u>, 458 U.S. 259, 261-62 (1982) (per curiam) (holding that properly finding some contraband supports probable cause for additional searching); <u>Morales-Zamora</u>, 914 F.2d at 205 (holding dog alert created probable cause to search).

Mr. Hunnicutt's assertion is not without evidentiary basis. Officer Raines explicitly testified that the refusal to consent persuaded him Mr. Hunnicutt "had something to hide." III R. at 30. Although ample other factors supporting reasonable suspicion were present here, as well as alternative justifications for all searching and further detention, we emphasize that refusal to consent should not

- 12 -

have been considered in determining reasonable suspicion. See Florida v. Bostick, 501 U.S. 429, 437 (1991); Royer, 460 U.S. at 498; Brown v. Texas, 443 U.S. 47, 51-52 (1979); United States v. Manuel, 992 F.2d 272, 274 (10th Cir. 1993). Any other rule would make a mockery of the reasonable suspicion and probable cause requirements, as well as the consent doctrine. These legal principles would be considerably less effective if citizens' insistence that searches and seizures be conducted in conformity with constitutional norms could create the suspicion or cause that renders their consent unnecessary.

## E. Impoundment of the Vehicle

Mr. Hunnicutt challenges the impoundment of his vehicle because one of the passengers had a valid license and Mr. Hunnicutt permitted him to drive the vehicle. However, Mr. Hunnicutt had no evidence of authority to permit another to drive the vehicle, and no one produced any verification of insurance. Thus, the officers properly impounded the vehicle in their community-caretaking function. See South Dakota v. Opperman, 428 U.S. 364, 368-69 (1976); Cady v. Dombrowski, 413 U.S. 433, 441 (1973). Alternatively, the officers properly impounded the vehicle to later search it based on probable cause. See Thomas, 458 U.S. at 261; Chambers v. Maroney, 399 U.S. 42, 51-52 (1970); United States v. Anderson, 104 F.3d 1059, 1065-66 (10th Cir. 1997).

## F. Inventory Search

Finally, Mr. Hunnicutt argues that any inventory search was invalid because it was not done pursuant to standardized procedures. The officer testified that he was unaware of any such procedures; therefore, any inventory search by him necessarily would have been unconstitutional. See Opperman, 428 U.S. at 374-75. As discussed above, however, all searching was supported by probable cause after one of the passengers handed the officer what appeared to be a large quantity of methamphetamine, to which the trained drug dog alerted. The government need not establish a regulated inventory search as an alternative justification.

AFFIRMED.