**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GEORGE CASTILLO,

    Defendant-Appellant.

No. 98-4024

(D.C. No. 96-CR-269-01-G)

(D. Utah)

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

VINCENTE MEZA-RUELAS,

    Defendant-Appellant.

No. 98-4021

(D.C. No. 96-CR-269-02-G)

(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.[**]

---

[*]  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]  After examining the briefs and appellate record this panel has determined that oral argument would not materially assist the determination of these appeals.  These cases are therefore ordered submitted without oral

(continued...)

On November 20, 1996, Defendants George Castillo and Vincente Meza-Ruelas were charged in a one-count indictment with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a). [1] The day before, police officers at the Salt Lake City International Airport found approximately one kilogram of cocaine fastened around the waist of each Defendant. Both Defendants filed motions to suppress the cocaine, arguing that the officers obtained the evidence in violation of the Fourth Amendment to the United States Constitution. After evidentiary hearings, the district court denied the motions. On November 17, 1997, Defendants entered conditional guilty pleas pursuant to Fed. R. Crim. P. 11(a)(2), reserving their right to appeal the denials of their respective motions to suppress evidence.

On appeal Defendants argue that the district court erred by refusing to find that (1) the DEA agents initiated contact with Defendants solely on the basis of their race, in violation of the Equal Protection Clause; (2) Defendants never voluntarily consented to the encounter and search; and (3) the agents had no reasonable, articulable suspicion of criminal activity justifying an investigative

---

[**](...continued)
argument. See Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1.9.

[1] Because Defendants raise similar issues and those issues all arise out of a November 19, 1996, encounter with police officers at the Salt Lake International Airport, we have consolidated these appeals.

detention. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## I. Background

On November 19, 1996, Defendants arrived at the Salt Lake City International Airport on a Delta Airlines flight from Los Angeles. Members of the Drug Enforcement Agency Metro Narcotics Task Force working at the airport randomly selected the flight to observe deplaning passengers because the flight originated in a narcotics source city. Detectives Paul Gardiner and Mike Judd, of the Salt Lake City police department, observed Defendants exiting the plane and testified that Defendants obviously were looking for someone, turning their heads from side to side and looking behind themselves repeatedly. Defendants were wearing untucked shirts and Defendant Castillo carried an overcoat in front of his body. The Detectives testified that they noted Defendants were Hispanic and may be from Mexico. The Detectives also testified that they would have followed Defendants regardless of their race because of their demeanor and conduct. The two detectives followed Defendants as they walked quickly through the terminal, repeatedly looking behind them, and through baggage claim without retrieving any luggage.

Once Defendants were outside of the terminal, Detective Gardiner approached Defendants, identified himself and asked them if they would speak with him for a few minutes. Defendant Castillo answered "yes" in English. As

the conversation began, Detective Gardiner noticed that Defendant Meza-Ruelas apparently did not speak English because Castillo was translating what Gardiner said into Spanish for Meza-Ruelas. Detective Gardiner then motioned for Detective Judd to join them to talk with Meza-Ruelas in Spanish. Detective Judd informed Meza-Ruelas, in Spanish, that he was a police officer, showed him his credentials and told him he was not under arrest and was free to go. Judd then asked Meza-Ruelas if he understood and the Defendant said "si" and nodded his head. Judd then asked Meza-Ruelas if he could speak to him for a few minutes and Meza-Ruelas responded "si." Defendants cooperated with the detectives, answering their questions and consenting to a search of their bag, coats and persons. Upon searching Defendants, the detectives found approximately one kilogram of cocaine fastened around the waist of each Defendant.

## II. Analysis

When reviewing the district court's denial of a motion to suppress, we accept the factual findings of the district court unless those findings are clearly erroneous. United States v. Arzaga, 9 F.3d 91, 93 (10th Cir. 1993). In doing so, we consider the totality of the circumstances and view the evidence in the light most favorable to the government. United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the

4

province of the district court. Id. The determination of whether a seizure occurred and the ultimate determination of reasonableness under the Fourth Amendment are questions of law reviewable de novo. Id.

The district court held two evidentiary hearings on the motions to suppress at which Defendants Castillo and Meza-Ruelas, along with narcotics task force detectives Gardiner and Judd, testified. The district court made thorough findings of fact and found the officers' testimony more credible than Defendants'. The district court concluded that Defendants were not targeted by the agents solely on the basis of race. The district court, applying the factors set forth in United States v. Zapata, 997 F.2d 751, 756-57 (10th Cir. 1993), also concluded that the encounter remained consensual and was not an investigative detention implicating the Fourth Amendment. Accordingly, the district court denied the motions to suppress.

We have reviewed the briefs of the parties, the transcripts of the suppression hearings, the district court's order and the entire record before us. The only issue raised on appeal that warrants further attention, is whether Defendants' voluntarily consented to the respective searches of their belongings and persons. Although Defendants raised this issue before the district court, the

order denying the motions to suppress did not clearly address it. [2]    Therefore, we do so now.  As to Defendants other arguments, we agree with the district court substantially for the reasons set forth in the order denying the motions to suppress evidence.

### A. Voluntariness of Consent

To determine whether Defendants voluntarily consented to the searches, we evaluate the totality of the circumstances, with the government bearing the burden of proof.    United States v. McRae   , 81 F.3d 1528, 1536-37 (10th Cir. 1996).  The government must show that there was "no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given."    Zapata , 997 F.2d at 758.

Our review of the record reveals no evidence of duress or coercion. The officers never unholstered or displayed their weapons.      See  United States v. Soto   , 988 F.2d 1548, 1558 (10th Cir. 1993).  The encounter lasted less than five minutes and occurred in public view on a busy sidewalk outside the terminal.      See id.  Detective Gardiner testified that he returned Defendants' identification and airline tickets to them prior to asking permission to search Defendants and their belongings.   See  United States v. Werking   , 915 F.2d 1404, 1410 (10th Cir. 1990)

---

[2]  Without providing further analysis, the district court's order merely stated that the record included "affirmative acts which indicate defendants' consent."

(no duress where officer returned driver's license and registration before asking to search).

Furthermore, the consent was specific and unequivocal. The detectives specifically sought permission to search Defendants' belongings and persons. See Zapata, 997 F.2d at 758. Detective Gardiner testified that he asked Castillo if the bag he was carrying belonged to him and if he had packed the bag. After Castillo answered "yes" to both questions, Gardiner then asked him if he could search the bag. After Defendant answered "yes," Gardiner looked through the bag and did not find any contraband. Gardiner asked Castillo if he could search his coat and Castillo replied "yes" and handed the detective his coat. Gardiner searched it and again did not find anything. Gardiner then asked Castillo if he had drugs on his person and he answered "no." Gardiner asked him if he could search him and Castillo said "yes." Consistent with Gardiner's testimony, Castillo testified that Gardiner asked him if he could search him and he "agreed." Castillo also testified that Gardiner told him that "[he] was not under arrest and was free to go" immediately prior to asking him if he could search his person.

Similarly, Detective Judd testified that after Meza-Rueles indicated that he understood Spanish, Judd asked Meza-Ruelas in Spanish if he could search his coat. Meza-Ruelas then handed Judd the coat and shook his head to indicate "yes." After Judd handed the coat back to Meza-Ruelas, he inquired in Spanish

7

if he could search him. Meza-Ruelas shook his head up and down and Judd inquired "with your permission" in Spanish and Meza-Ruelas said "si."

The record contains no evidence that Defendants did not understand the detectives' requests. Indeed, Castillo testified that when Gardiner asked him if he could search his bag, Castillo handed his bag to Gardiner. See Zapato, 997 F.2d at 758 (act of opening bag and handing it to agent precluded claim that the defendant misunderstood the request). These circumstances compel the conclusion that Defendants' consent was unequivocal, specific, and freely and intelligently given. For the reasons stated above, the decision of the district court is

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

8