**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 20 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARLTON KEITH JACKSON,

      Defendant-Appellant.

No. 98-6272
(D.C. No. CR-98-20-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**  *

---

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. <u>See</u> Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant was indicted for one count of possession with intent to distribute cocaine powder in violation of 21 U.S.C. § 841(a)(1). He filed a motion to suppress the evidence, arguing that the cocaine was obtained in violation of his Fourth Amendment rights, and the district court denied the motion. Defendant entered a guilty plea, reserving the right to appeal the denial of his motion to suppress. Defendant now appeals the denial of his suppression motion.

Defendant was heading south on Interstate 35 in Oklahoma City on July 26, 1997. Two Oklahoma City police officers, Sargent Alexander and Captain Quick, were traveling on that same interstate when they observed defendant's pickup truck straddle the lane divider for 50 to 60 yards, drift between the lane dividers, and then abruptly move into its original lane without signaling. In observing defendant's vehicle, the officers could not see a rear tag. The officers then saw defendant make an illegal lane change by signaling at the same time he changed lanes. At that point, the officers conducted a traffic stop by turning on their flashing lights and signaling defendant to pull over to the side of the road.

Upon approaching the driver's side of defendant's pickup, Officer Alexander noticed a paper tag in the rear window and a change of clothes in the vehicle. Defendant, the only person in the vehicle, gave Officer Alexander his Texas driver's license and said he did not have insurance verification because the pickup truck was rented. Defendant produced a rental agreement that identified

Lisa Jackson as the renter and the only authorized driver of the pickup truck. Defendant told Officer Alexander that Lisa Jackson was his wife. According to the rental agreement, the pickup truck should have been returned to the rental agency on July 22, 1997, four days before the officer stopped defendant. In questioning defendant about his travel and the rental agreement, Officer Alexander observed that defendant was nervous, avoided eye contact, shifted positions, and was apprehensive and anxious. Defendant told the officer he had been to Tulsa to visit friends, but he later said he had been to visit a girlfriend. Defendant could not provide the phone number or address of the person he had visited.

Officer Alexander returned to his car to conduct a records and criminal history check and write a traffic citation for defendant's illegal lane change. The officer also called a second car to the scene so that he could tape an interview with defendant because defendant had been inconsistent in his answers to Officer Alexander's initial questioning.[1] The second car arrived quickly, and Officer Alexander tape recorded the conversation he had with defendant in the back seat of the second car.

---

[1] The officers who stopped defendant had a taping device in their car, but they had a drug-sniffing dog with them in the back seat, so they could not interview defendant in that car.

-3-

When asked about prior arrests, defendant said he had been arrested for burglary. He neglected to mention his arrest for conspiracy to distribute narcotics that the criminal history check had disclosed. When Officer Alexander asked him about the narcotics arrest, defendant stated that the charge had been changed to gambling. Officer Alexander asked defendant about the rental car being overdue, and defendant said he had obtained an oral extension, although he had nothing to substantiate an extension. When asked whether he had any guns or cash, defendant immediately answered that he did not. When asked whether he had any drugs, however, defendant hesitated before answering that he did not. Based on the officer's experience and training, the timing of defendant's responses indicated that defendant's denial of possession of drugs was not truthful. Defendant continued to be nervous throughout the interview.

Defendant never gave a direct answer when Officer Alexander repeatedly asked him if they could search the pickup truck. When he was unable to obtain a voluntary consent to search, Officer Alexander asked Officer Quick to have the dog screen the exterior of the pickup truck. The dog alerted to the presence of a controlled substance. The officers searched the vehicle and found cocaine powder in a pillowcase in the backseat. Defendant was then arrested, approximately thirty minutes after the initial traffic stop.

Defendant contends both the traffic stop [2] and the scope and duration of the detention that followed violated his Fourth Amendment right to be free from unlawful searches and seizures. In deciding whether defendant's constitutional rights were violated, we consider the totality of the circumstances, and we view the evidence in the light most favorable to the government. *See United States v. Villa-Chaparro*, 115 F.3d 797, 800-01 (10th Cir.), *cert. denied*, 118 S. Ct. 326 (1997). We must accept the district court's factual findings unless they are clearly erroneous. *See United States v. Hunnicutt,* 135 F.3d 1345, 1348 (10th Cir. 1998). "Judging the credibility of the witnesses, determining the weight to be afforded the testimony, and drawing reasonable inferences and conclusions from the testimony, are within the province of the district court." *Villa-Chapparo*, 115 F.3d at 801. "The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo." *Hunnicutt*, 135 F.3d at 1348.

Stopping defendant for a traffic offense was a seizure under the Fourth Amendment. *See Villa-Chapparo*, 115 F.3d at 801. There is no Fourth Amendment violation, however, if the stop was a valid traffic stop. A traffic stop

---

[2] Defendant states in his brief that he "contends that the encounter was barely justified at its inception." Appellant's Br. at 6. To the extent, however, that defendant goes on to argue the validity of the stop, we address the constitutionality of the stop.

is analogous to an investigative detention, and we analyze its reasonableness under the standards set forth in *Terry v. Ohio,* 329 U.S. 1 (1968). First, we determine "whether the officer's action was justified at its inception," and then "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20.

> [A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant, for purposes of Fourth Amendment review, whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop. It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Villa-Chaparro*, 115 F.3d at 801 (quotation omitted). The district court found Officer Alexander's testimony regarding his observation of defendant's unlawful lane change to be credible. We conclude that credibility finding by the district court is not clearly erroneous. Based on defendant's violation of a traffic ordinance, the officer's stop was lawful.

Next, we must determine whether Officer Alexander's continued detention of defendant was lawful. To meet the standard of reasonableness, an

> officer's actions during a detention must be reasonably related in scope to the circumstances which justified the initial stop. . . . An investigative detention may be expanded beyond its original purpose,

-6-

however, if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity, that is to say the officer must acquire a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*Villa-Chaparro*, 115 F.3d at 801-02 (quotations and citations omitted). There are many factors that this court has held justified continued detention after a stop. "In particular, the inability to offer proof of ownership or authorization to operate the vehicle has figured prominently in many of our cases upholding further questioning." *Hunnicutt*, 135 F.3d at 1349. In this case, the pickup truck was rented in another person's name, the rental agreement indicated that the vehicle was due to be returned to the rental agency four days earlier, and defendant was not listed on the rental agreement as an authorized driver of the vehicle. In addition to this inability to offer proof of authorization to possess and operate the vehicle, defendant gave inconsistent answers when questioned about his trip; Officer Alexander perceived defendant as being nervous, apprehensive, and evasive; and defendant was deceptive about his criminal history. These factors were sufficient to provide the officer with a particularized and objective basis for suspecting criminal activity, permitting Officer Alexander to expand the scope and duration of the detention beyond the initial traffic stop. Officer Alexander did not violate defendant's Fourth Amendment rights by detaining him for further questioning.

Finally, the canine sniff did not implicate defendant's Fourth Amendment rights because "a canine sniff of an already legitimately detained automobile is not a 'search' within the meaning of the Fourth Amendment." *See id.* at 1350. Because the dog alerted to the presence of a controlled substance while defendant was legally detained, the officers had probable cause to search the vehicle. *See United States v. Massie*, 65 F.3d 843, 849 (10th Cir. 1995).

We conclude the traffic stop was valid and the officer had a reasonable suspicion of criminal activity to justify expanding the scope and the duration of defendant's detention following the stop. We AFFIRM the district court's denial of defendant's motion to suppress.

Entered for the Court

Mary Beck Briscoe
Circuit Judge