**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

FRANCISCO V. VILLASENOR,

    Defendant-Appellant.

No. 02-3066
(D. Kan.)
(D.Ct. No. 01-CR-40003-01-RDR)

_____

**ORDER AND JUDGMENT**[*]

_____

Anthony W. Mattivi (Eric F. Melgren, United States Attorney, and Nancy Landis Caplinger, Assistant United States Attorney on the brief), Assistant United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

Robert V. Eye of Irigonegaray & Associates, Topeka, Kansas, for Defendant-Appellant.

_____

Before **HENRY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HARTZ**, Circuit Judge.

_____

Francisco Villasenor entered a conditional guilty plea to possession with

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

intent to distribute thirteen kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). In the plea agreement, Mr. Villasenor reserved the right to appeal the district court's denial of his motion to suppress evidence. The present appeal employs this right. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## BACKGROUND

A Kansas Highway Patrol Trooper stopped the Ford Explorer Mr. Villasenor was driving after observing it cross the center line several times. A female occupied the Explorer's front passenger seat. As the trooper approached the Explorer, he noticed a strong chemical odor. The trooper asked Mr. Villasenor for his driver's license and registration. Mr. Villasenor produced a Texas driver's license and documents showing the Explorer was registered in Washington. The Explorer was not registered to either Mr. Villasenor or his passenger. Mr. Villasenor first said he owned the Explorer, but later explained he was in the process of buying it. Both Mr. Villasenor and his passenger seemed excessively nervous for a routine traffic stop.

The trooper had Mr. Villasenor accompany him to the patrol vehicle. With Mr. Villasenor sitting in the front passenger seat, the trooper began to write a

warning citation. As he was writing, the trooper questioned Mr. Villasenor about his travel plans. Mr. Villasenor said he was traveling from Seattle to Florida via Kansas City for a vacation. His hands were shaking, and he made little eye contact throughout the encounter.

When the trooper checked the vehicle registration, he learned the Explorer had only been registered for two months. Leaving Mr. Villasenor in the patrol car, the trooper returned to the Explorer to check the vehicle identification number against the number on the vehicle registration. He also stopped to ask the passenger about her travel plans. She stated they were driving to Florida. Again, the passenger seemed extremely nervous.

Upon returning to the patrol vehicle, the trooper explained he was only going to give Mr. Villasenor a warning citation and it would not cost any money. The trooper then asked whether Mr. Villasenor or his companion had any family in Florida and inquired about a stop the couple were going to make in Kansas City. After receiving answers to these questions, the trooper gave Mr. Villasenor the warning citation, returned Mr. Villasenor's license and registration, and told Mr. Villasenor to "have a good trip" and "[t]ake care."

As Mr. Villasenor was exiting the patrol vehicle, the trooper said "[d]o you mind if I ask you a couple of questions, would that be okay?" Mr. Villasenor agreed. The trooper asked whether Mr. Villasenor was carrying anything illegal. Mr. Villasenor said he was not. The trooper then asked to search the vehicle, to which Mr. Villasenor responded "[s]ure."

After they both exited the patrol car, Mr. Villasenor provided the keys to the Explorer and the trooper used them to open the back cargo door. Almost immediately the trooper noticed a false compartment. The trooper closed the door, retrieved his drug dog, and had it circle the vehicle. The dog alerted at the back cargo area. The trooper then handcuffed Mr. Villasenor and read him the *Miranda* warning.[1] This entire sequence of events was captured on video tape from a camera in the trooper's vehicle. Law enforcement later discovered twenty-nine pounds of cocaine in the false compartment.

Two days later, a Garden City Police Officer questioned Mr. Villasenor. Prior to the questioning, the officer gave the *Miranda* warning and Mr. Villasenor signed a form waiving his *Miranda* rights. In addition to his oral answers, Mr.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Villasenor provided a written statement.  The record on appeal does not reflect the substance of either the oral answers or the written statement.

## DISTRICT COURT'S RULING

Mr. Villasenor filed a motion in district court seeking to suppress the discovered cocaine and Mr. Villasenor's oral and written statements to the Garden City Police Officer.  Among other things, he argued the Kansas Highway Patrol Trooper's questioning and subsequent search violated the Fourth Amendment because they were not based on a reasonable suspicion or consent.  He also argued he did not voluntarily and intelligently waive his *Miranda* rights.  The district court found Mr. Villasenor "lack[ed] proof that he had permission to operate and possess the vehicle"; the trooper "detected a strong unexplainable chemical odor from the vehicle; the vehicle was apparently being driven across the country; the destination was only vaguely identified; the driver and passenger were unusually nervous; and the vehicle had been obtained by the registered owner only two months earlier." *United States v. Villasenor*, No. 01-40003-01-RDR, 2001 WL 1013325, at *3 (D. Kan. Aug. 13, 2001).  Based on these findings, the court concluded the trooper's questioning was justified by reasonable suspicion.  *Id.*  The district court also concluded Mr. Villasenor freely and intelligently consented to the trooper's search of the Explorer.  *Id.* at *4.  In

support of this conclusion the district court found the trooper returned Mr. Villasenor's paperwork and Mr. Villasenor "understood ... he was free to go because [he] began to exit the trooper's car." *Id.* at *3. The court noted there was "no evidence of duress or coercion leading to the consent to search" and Mr. Villasenor's consent was "clear and unhesitating." *Id.* at *4. Finally, the district court concluded Mr. Villasenor voluntarily and intelligently waived his *Miranda* rights. *Id.* Relying on these findings and conclusion, the district court denied Mr. Villasenor's motion to suppress. *Id*. at *5.

Mr. Villasenor subsequently entered a conditional guilty plea. The district court sentenced him to seventy months imprisonment and three years supervised release.

## **DISCUSSION**

Mr. Villasenor raises two issues on appeal. First, he claims the trooper violated his Fourth Amendment rights when, after telling him he would receive a warning citation, the trooper further questioned him about his travel plans. Second, he argues he was detained and could not voluntarily consent to the trooper's search of the Explorer because the trooper "moved almost immediately from" returning Mr. Villasenor's documentation to additional questioning and

asking for consent to search the vehicle.[2] For these reasons, Mr. Villasenor believes the district court erred in denying his motion to suppress. Mr. Villasenor has not appealed the district court's decision concerning the waiver of his *Miranda* rights.

In reviewing he district court's denial of Mr. Villasenor's motion to suppress, "'we accept its factual findings unless clearly erroneous and view the evidence in the light most favorable to the government.'" *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999) (quoting *United States v. Hargus*, 128 F.3d 1358, 1361 (10th Cir. 1997), *cert. denied*, 523 U.S. 1029 (1998)), *cert. denied*, 531 U.S. 830 (2000). However, the determination of whether the trooper's conduct was unreasonable and therefore in violation of the Fourth Amendment "is a question of law which we review de novo." *Id.*

The Fourth Amendment protects people from "unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited

---

[2] Although, Mr. Villasenor's brief purportedly raises three issues, two of the issues deal with whether the trooper acted properly when he asked for permission to search the Explorer.

and the resulting detention quite brief." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (quotation marks and citation omitted). To determine the reasonableness of a traffic stop, we must ask whether the trooper's actions were "'reasonably related in scope to the circumstances which justified [the stop].'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). We have repeatedly held it is reasonable for a trooper conducting a routine traffic stop to "request a driver's license and vehicle registration, run a computer check, and issue a citation." *Id*. at 1349 (citing *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994)). The stop must "'last no longer than is necessary to effectuate [its purpose].'" *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

The trooper may asks questions beyond the scope of the initial purpose of the stop in two instances. "First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring." *Id.* (citing *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993)). "Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." *Id.* (citing *Gonzalez-Lerma*, 14 F.3d at 1483). Mr. Villasenor argues neither of these alternatives supports the trooper's questioning

-8-

and search of the Explorer in this case.  We address each argument in turn.

## I.    Reasonable Suspicion

Mr. Villasenor first argues the "questioning that occurred after [the trooper] determined that Mr. Villasenor was free to proceed with only a warning ticket was, at that point, impermissible because [the trooper] had no objective articulable evidence of criminal conduct attributable to Mr. Villasenor."We conclude the questioning was proper.

"A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity" justifying further detention and questioning.  *Id.*  A reasonable suspicion justifying further questioning exists when the driver has no proof of ownership or authority to operate the vehicle.  *See id.*  Extreme nervousness, when combined with other factors, also can be a basis for reasonable suspicion.  *See Soto,* 988 F.2d at 1556 & n.4.  A reasonable suspicion is "distinct from an inchoate and unparticularized suspicion or hunch." *United States v. Valles*, 292 F.3d 678, 680 (10th Cir. 2002) (quotation marks and citation omitted).  Ultimately, we must assess reasonable suspicion in light of the "totality of the circumstances."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

In this case, the district court found Mr. Villasenor did not provide "proof that he had permission to operate and possess the vehicle." *Villasenor*, 2001 WL 1013325, at *3. Mr. Villasenor acknowledges the "vehicle registration problem" allowed the trooper to question him about his travel plans. The problem, as Mr. Villasenor sees it, is the trooper continued his questions after Mr. Villasenor had "explained away" the problem. Mr. Villasenor contends the trooper should have ceased questioning when his companion confirmed the couple was headed to Florida. He claims that at this point, the trooper had only a "generalized inchoate hunch that 'something illegal' was happening." Furthermore, according to Mr. Villasenor, the trooper's "announcement, upon reentering the patrol car, that only a warning ticket would be issued is objective evidence of his determination that the factors he considered incriminating were inadequate to justify" further detention.

Unsurprisingly, Mr. Villasenor's position lacks case law support. Mr. Villasenor offers no case law suggesting that, in the absence of any objective evidence such as a bill of sale, a trooper must take a driver's word as proof he has authority to operate a vehicle. Likewise, Mr. Villasenor has not cited cases holding troopers must ignore other suspicious circumstances, such as extreme nervousness or vague travel plans, once travel companions give consistent stories.

-10-

Such facts are merely part of the entire picture a court must evaluate when considering the totality of the circumstances. *Cf. id.*

As to Mr. Villasenor's argument that the trooper's announcement he would only receive a warning constitutes "objective evidence" the trooper did not have authority to ask further questions, we flatly disagree. We remind Mr. Villasenor we must view the evidence "in the light most favorable to the government." *Hill*, 199 F.3d at 1147. Although the trooper told Mr. Villasenor he would only receive a warning, the trooper did not immediately give him the written warning or return the registration documents. Instead, the trooper sought to further clarify Mr. Villasenor's travel plans. This suggests the officer was not completely satisfied with the previous vague answers Mr. Villasenor and his companion provided. Consequently, the trooper's actions do not amount to "objective evidence" no reasonable suspicion of criminal activity existed.

Thus, Mr. Villasenor has failed to persuade us the district court was clearly erroneous in finding he did not provide proof of his authority to operate the vehicle. Here, the circumstances provided more than a mere "hunch" Mr. Villasenor was engaged in criminal activity. *See Valles*, 292 F.3d at 680. Mr. Villasenor's failure to provide proof of his authorization to operate the Explorer,

combined with his nervous behavior and vague answers to initial questions about his travel plans, provided a reasonable suspicion of criminal activity sufficient to support the trooper's questions.[3]

## II.    Consensual Encounter

Mr. Villasenor next argues the trooper, after returning his license and registration, should have allowed him to continue on his way. He faults the trooper for asking whether he was transporting anything illegal and for seeking permission to search the Explorer. In Mr. Villasenor's estimation, the questioning was not supported by a reasonable suspicion and the encounter was not consensual. Specifically, Mr. Villasenor argues the encounter was not consensual even though the trooper had returned his documents because the trooper "used equivocal phrases such as 'have a good trip' and 'take care' as he immediately segued into his request for further questioning."

---

[3] As mentioned earlier, the district court relied on additional facts, like the chemical odor, in concluding the trooper's questions were supported by a reasonable suspicion of criminal behavior. On appeal, Mr. Villasenor offers reasons why these additional facts did not support a reasonable suspicion of criminal activity. Even assuming these facts amounted to nothing more than innocent behavior, we conclude Mr. Villasenor's lack of proof of authority to operate the vehicle, excessive nervousness, and vague answers created a reasonable suspicion of criminal activity.

We have previously held a routine traffic stop becomes a consensual encounter once the trooper has returned the driver's documentation so long as "'a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information.'" *United States v. Elliot*, 107 F.3d 810, 814 (10th Cir. 1997) (quoting *United States v. McKneely*, 6 F.3d 1447, 1451 (10th Cir. 1993)). A trooper may ask questions unsupported by a reasonable suspicion during a consensual encounter. *See Gonzalez-Lerma*, 143 F.3d at 1483. Furthermore, a search does not violate the Fourth Amendment when a person agrees to the search during a consensual encounter. *See United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir.), *cert. denied*, 525 U.S. 903 (1998). Whether a person gives consent "is a question of fact and is determined from the totality of the circumstances." *Id.*

Applying these principles, we conclude the traffic stop became a consensual encounter. In this case, it is undisputed the trooper returned Mr. Villasenor's documentation. The district court found the trooper told Mr. Villasenor to "have a good trip" and "[t]ake care." *Villasenor*, 2001 WL 1013325, at *3. The district court also found Mr. Villasenor began to exit the patrol car. *Id.* Mr. Villasenor does not challenge these findings. Instead, he argues he did not know he was free to go because the trooper used "equivocal

phrases." Considering these circumstances, we hold a reasonable person would believe he was free to leave. Because the encounter was consensual, the trooper could ask Mr. Villasenor additional questions and seek permission to search the Explorer.[4]

Mr. Villasenor appears to argue his consent was not voluntary because the trooper "control[led]" the situation. He argues the trooper should have "empowered" him "with the knowledge that he could refuse to answer questions and refuse the search." Although the trooper did not inform Mr. Villasenor of his right to refuse to allow the search, proof of knowledge of the right to refuse consent is not a "necessary prerequisite to demonstrating a 'voluntary' consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 232-33 (1973). Instead, we look at the totality of the circumstances. *See id.* The district court found there was "no evidence of duress or coercion leading to the consent to search" and Mr. Villasenor's consent was "clear and unhesitating." *Villasenor*, 2001 WL

---

[4] Mr. Villasenor also argues "[t]here must be a sufficient attenuation between an alleged detention and a consent to search." In support of his argument he cites *United States v. Gonzalez*, 763 F.2d 1127, 1133 (10th Cir. 1985). *Gonzalez* held "if there is sufficient attenuation between an illegal detention and a consent to search, the search may be valid despite the prior illegal acts of the officer." *Id. Gonzalez* is not applicable here, and the government need not prove attenuation, because Mr. Villasenor's consent was not preceded by an illegal detention or other Fourth Amendment violation. *See supra* Part I.

1013325, at *4. Mr. Villasenor has not challenged the district court's findings.

Under these circumstances, we conclude the district court correctly found Mr.

Villasenor consented to the trooper's search.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Mr.

Villasenor's motion to suppress evidence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge