F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

vs.

JOEL CRIOLLO-CASTENEDA,

    Defendant - Appellant.

No. 03-4136
(D.C. No. 2:02-CR-372-DAK)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **BRISCOE**, Circuit Judge.

Defendant-Appellant Joel Criollo-Casteneda entered a conditional plea to possession of 500 grams or more of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1), and was sentenced to 70 months imprisonment and three years supervised release. He now appeals the denial of his motion to suppress, arguing that the consent search of his vehicle was unlawful because it was the product of an unlawful detention. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Background

On May 15, 2002 at approximately 1:10 p.m. while traveling through Utah, Mr. Criollo-Casteneda was clocked on radar going 83 miles per hour in a 75-mile-per-hour zone by Utah Highway Patrol Sergeant Paul Mangelson. The officer informed Mr. Criollo-Casteneda that he had been pulled over for speeding and the officer asked to see his driver's license. Mr. Criollo-Casteneda informed the officer that he did not have a license. He did, however, produce a registration indicating that the vehicle belonged to one Zaira Berenience Corravubuios. The officer noticed a strong minty odor emanating from the vehicle, though he could detect no obvious source. The officer testified that such an odor often masks the odor of narcotics. The officer also noticed a pen cap with no corresponding pen, some used napkins on the passenger seat, and a cell phone. According to the officer, the pen cap, napkins and cell phone were indicative of narcotics consumption. The officer also observed that the vehicle's ignition key was on a key ring by itself with a tag like car dealers use to track inventory. The officer thought that the vehicle might be stolen or in the wrong hands, but he did not run a check on the vehicle to see if it was stolen. Finally, the officer noticed that Mr. Criollo-Casteneda's eyes appeared glassy and bloodshot, suggesting personal consumption.

The officer suspected that Mr. Criollo-Casteneda may have been using or

transporting illegal drugs. Accordingly, before returning the vehicle registration or otherwise advising Mr. Criollo-Casteneda of the consequences of driving without a license, the officer requested permission to search the vehicle. Mr. Criollo-Casteneda gave his consent to search and did not object at any time while the search occurred. The search revealed two packages of methamphetamine (smeared with toothpaste) hidden in the rear quarter panel of the vehicle. Mr. Criollo-Casteneda was arrested and advised of his rights.

After concluding that Mr. Criollo-Casteneda had standing to challenge the search of the vehicle, the district court concluded that Mr. Criollo-Casteneda gave voluntary consent to the search of his vehicle and that search did not exceed the scope of that consent. The district court prefaced its holding by stating that "[t]here is nothing to suggest that the initial stop or subsequent detention of Criollo-Casteneda was improper, and Defendant does not contend otherwise." I R. Doc. 19 at 5. The district court relied upon the defendant's concession at oral argument that "we do not challenge the detention of the defendant following the stop of the vehicle" based upon defendant's operating the vehicle in violation of Utah Code. II Supp. R. at 10.

## Discussion

The parties disagree about the standard of review. Ordinarily, we review

the findings of the district court on a motion to suppress in the light most favorable to the prevailing party; Fourth Amendment reasonableness is reviewed de novo. United States v. Tueller, 349 F.3d 1239, 1242 (10th Cir. 2003). The government suggests that our review should be for plain error because (1) the detention argument now raised was not raised by the defendant in his motion to suppress or at the suppression hearing, and (2) the defendant actually conceded the detention issue at the suppression hearing. We agree.

We recently held "that when the district court explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal even if he failed to raise the issue in district court," and the ordinary standard of review applies, not plain error. United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1328 (10th Cir. 2003). Here, the district court remarked that nothing suggested a constitutionally suspect initial stop or detention, but it is clear that it did not evaluate this legal issue, nor develop additional facts that would have assisted in a more comprehensive resolution. There simply was no reason for the district court to go further given the Defendant's concession of this issue. Our review is thus for plain error–requiring "(1) an error; (2) that is plain or obvious; (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 1329.

According to Mr. Criollo-Casteneda, his continued detention beyond that

period necessary to effectuate the original purpose of the traffic stop constituted an illegal seizure which tainted any consent. See United States v. Melendez-Garcia, 28 F.3d 1046, 1054 (10th Cir. 1994). When a police officer stops a vehicle for a suspected traffic violation, a seizure has occurred within the meaning of the Fourth Amendment. Such stops are considered akin to investigative detentions and must be premised on a reasonable suspicion that the motorist has violated a provision of the applicable motor vehicle code. See United States v. Ramstad, 308 F.3d 1139, 1144 (10th Cir. 2002). The Supreme Court has interpreted the Fourth Amendment as requiring that such investigative detentions "last no longer than necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983).

An officer engaged in a routine traffic stop may "request a driver's license and vehicle registration, run a computer check, and issue a citation." United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1998). Extending the length of the detention beyond the time necessary to perform these functions requires either that the encounter be consensual in nature or that the officer have an objectively reasonable suspicion of criminal activity. Id. Refining this requirement, we have held that a traffic stop cannot be transformed into a consensual encounter while the officer remains in possession of the motorist's paperwork because the motorist would not feel free to terminate the encounter.

United States v. McKneely, 6 F.3d 1447, 1451 (10th Cir. 1993).

Mr. Criollo-Castaneda argues that the officer's request to search the vehicle exceeded the permissible scope of the traffic stop and thus constituted an illegal detention. Specifically, relying on Royer, Mr. Criollo-Casteneda suggests that the permissible scope of his detention extended only so far as to allow the officer to process violations for speeding and driving without a license. Mr. Criollo-Casteneda contends that when the officer, in the absence of reasonable suspicion and while still in possession of the vehicle registration, requested permission to search the car, he exceeded the permissible scope of the detention, thereby rendering it illegal. Accordingly, he argues, the consent to search is tainted by an illegal detention and the products of the search should be suppressed.

The government concedes that Mr. Criollo-Casteneda's detention was not consensual because the officer had possession of the registration. Indeed, the officer testified that prior to his arrest, Mr. Criollo-Casteneda "wasn't going to drive the vehicle away" due to the absence of a driver's license and the officer's suspicion that he was impaired. II Supp. R. at 20-21. The government argues that the officer had reasonable and articulable suspicion to detain the Defendant beyond the initial stop and ask for permission to search the vehicle. We consider the totality of the circumstances based on the record furnished to us. United States v. Arvizu, 534 U.S. 266, 273 (2002). We agree with the government.

Although we may question the persuasive value of a pen cap without a pen, used napkins without surrounding fast food wrappers, and a cell phone standing alone, when combined with a strong mint odor without any obvious source and the appearance of Mr. Criollo-Casteneda's eyes, the totality of the circumstances adequately support reasonable suspicion. II Supp. R. at 16, 19. We hold that there was no error, let alone plain error in the district court's denial of the suppression motion. Thus, the judgment is

    AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

**No. 03-4136, <u>United States v. Criollo-Casteneda</u>**

**BRISCOE, Circuit Judge, concurring:**

I concur in the order and judgment. I write separately only to highlight that an individual can voluntarily consent to a search even though the individual is subject to a non-consensual detention.

To the extent defendant is arguing that a voluntary and valid consent cannot be given by a person being legally detained, he is wrong. A "[v]alid consent can be given by a person being detained." <u>United States v. Soto</u>, 988 F.2d 1548, 1557 (10th Cir. 1993). <u>See also</u> <u>United States v. Orrego-Fernandez</u>, 78 F.3d 1497 (10th Cir. 1996) (discussing <u>Soto</u> and reaffirming that a person being detained on side of highway is capable of voluntarily consenting to search of vehicle). "The voluntariness of consent must be determined from the totality of the circumstances, and the government bears the burden of proof on the issue." <u>Soto</u>, 988 F.2d at 1557. To sustain its burden, "the government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." <u>Id.</u> Here, the district court found that defendant's consent was voluntarily given, and this court "must accept that finding unless it is clearly erroneous." <u>Id.</u>

Defendant does not argue that the district court's finding of voluntary consent was clearly erroneous and there would be no merit to such argument. No threat or overt coercion was applied to obtain consent. Only one officer was

present and the encounter took place in public view.  The officer requested permission to search the car only one time and there is no evidence that he used a threatening tone or demeanor.  Defendant does not argue on appeal that the scope of the search exceeded his consent.