**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

ALFREDO GUTIERREZ-DANIEZ,

       Defendant-Appellant.

No. 97-1065

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-CR-370-N)

---

Charlotte J. Mapes, Assistant United States Attorney (Andrew A. Vogt, Assistant United States Attorney, and Henry L. Solano, United States Attorney, with her on the brief), Denver, Colorado, for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender (Kari Levine Bourg, Research & Writing Specialist, with him on the brief), Denver, Colorado, for Defendant-Appellant.

---

Before ANDERSON, TACHA, and BALDOCK, Circuit Judges.

---

BALDOCK, Circuit Judge.

Defendant Alfredo Gutierrez-Daniez, a citizen of Mexico, entered a conditional

plea of guilty to one count of reentry of a deported alien subsequent to an aggravated

felony conviction in violation of 8 U.S.C. § 1326(a) & (b)(2).  Pursuant to Fed. R. Crim.
P. 11(a)(2), Defendant reserved his right to appeal the district court's denial of his motion
to suppress evidence resulting from a purportedly illegal detention of his person.  On
appeal, Defendant contends that his detention was not supported by a reasonable,
articulable suspicion of criminal activity, and was therefore unlawful.  Accordingly,
Defendant asks us to suppress all fruits of his detention and subsequent arrest, including
the records of his prior conviction and deportation.  Our jurisdiction arises under 28
U.S.C. § 1291.  We affirm.

Well established standards govern our review of a district court's denial of a
motion to suppress.  We consider the totality of the circumstances and view the evidence
in a light most favorable to the government.  United States v. Wood, 106 F.3d 942,
945-46 (10th Cir. 1997).  We accept the district court's factual findings unless those
findings are clearly erroneous.  Id.  Judging the credibility of the witnesses, determining
the weight to be afforded the testimony, and drawing reasonable inferences and
conclusions from the testimony, are within the province of the district court.  United
States v. Toro-Pelaez, 107 F.3d 819, 824 (10th Cir.), cert. denied, 118 S. Ct. 129 (1997).

The district court's ultimate determination of reasonableness under the Fourth
Amendment is a question of law reviewable de novo.  United States v. Shareef, 100 F.3d
1491, 1499 (10th Cir. 1996).  However, we view the officer's conduct with "common
sense" considering "ordinary human experience."  United States v. Sharpe, 470 U.S. 675,

685 (1985). "This approach is intended to avoid unrealistic second-guessing of police officers' decisions and to accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." United States v. Alvarez, 68 F.3d 1242, 1244 (10th Cir. 1995).

## I.

Viewing the evidence in a light most favorable to the government, the record reveals that shortly after 9:00 a.m. on August 12, 1996, Sergeant David Fisher, a police officer with the City and County of Denver, was patrolling the "Crofton Area" around 23rd and Curtis Streets near downtown Denver. Sergeant Fisher was part of a task force of fellow officers and federal Immigration and Naturalization Service agents assigned to "clean up" the area, which had a reputation as a tar heroin market and as a gathering place for illegal aliens and other transients.

As he drove through the area, Sergeant Fisher observed Defendant and another man standing on the sidewalk near a vacant lot posted with no trespassing and no loitering signs. Sergeant Fisher became suspicious when he witnessed Defendant address a passing male pedestrian. Without breaking stride, the pedestrian shook his head no. After driving around the block, Sergeant Fisher again witnessed Defendant apparently soliciting five or six more pedestrians. One of the pedestrians stopped to speak with Defendant. When the pedestrian looked around and saw Sergeant Fisher in his marked police car, however, he appeared alarmed, shook his head no, and rapidly walked away.

3

At that point, Sergeant Fisher approached Defendant and the other man, believing them to be involved in drug-related activities.[1]

Defendant appeared tense and nervous while the other man appeared calm and relaxed. Sergeant Fisher attempted to talk to the two men, but they apparently did not speak English. Sergeant Fisher briefly patted down each man to check for weapons. Sergeant Fisher then radioed an Officer Cameron and Agent Lee, who were working the area in tandem, for assistance. A moment later, Officer Cameron and Agent Lee arrived. Sergeant Fisher turned the investigation over to Agent Lee, who spoke Spanish, and returned to his vehicle.

Agent Lee identified himself to the men as a federal immigration officer. Upon questioning, the man with Defendant identified himself as a citizen of Mexico and produced a valid green card. Agent Lee then began to question Defendant. Defendant continued to appear uneasy. Agent Lee asked Defendant his name and nationality a third time. Defendant stated that he was a citizen of Mexico, his name was Dominguez and he too had a green card, but had left it at home. When Agent Lee asked where he lived, Defendant did not respond. Agent Lee then asked Defendant if he had come into the country legally or illegally. Defendant told Agent Lee that he had come in illegally and did not have a green card. Agent Lee arrested Defendant.

---

[1] Sergeant Fisher testified that a tar heroin street seller often will put just a few tied balloons of the substance in his mouth so that he may easily swallow it if approached by a police officer. Thus, there is little fear of uniformed police officers in the area.

Following a hearing at which Sergeant Fisher and Agent Lee testified, the district court denied Defendant's motion to suppress.  The district court found that once Sergeant Fisher patted down Defendant, Defendant was not free to leave and the encounter was no longer consensual.  The court further found, however, that Sergeant Fisher had reasonable suspicion to detain Defendant under the totality of the circumstances.  To support its finding, the district court cited the reputation of the area for drug activity, Defendant's solicitation of numerous pedestrians, and Defendant's nervous demeanor.

## II.

Based upon the foregoing, Defendant claims Sergeant Fisher's detention of his person violated the Fourth Amendment.  The Fourth Amendment protects individuals from unreasonable seizures by government officials.  U.S. Const. amend. IV.  The touchstone of the Fourth Amendment is reasonableness.  We judge the reasonableness of an investigative detention under the two-part inquiry set forth in Terry v. Ohio, 392 U.S. 1, 19-20 (1968).  First, we ask whether the officer was justified in detaining defendant at the inception.  If so, we next ask whether the officer's actions during the detention were reasonably related in scope to the circumstances which justified the initial detention.  An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the detention. The scope of the detention must be carefully tailored to its underlying justification.  Wood, 106 F.3d at 945.  In this case, Defendant does not

challenge the officers' actions during the detention, but only the reasonableness of the detention itself. We now turn to that inquiry.

A.

A detention is justified at its inception only if law enforcement officials are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the detained individual may be engaged in criminal activity. See United States v. Cantu, 87 F.2d 1118, 1121 (10th Cir.), cert. denied, 117 S. Ct. 265 (1996). The law does not specifiy a minimum number of factors necessary to constitute reasonable suspicion. United States v. Lopez-Martinez, 25 F.3d 1481, 1484 (10th Cir. 1994). "The process does not deal with hard certainties, but with probabilities" based upon evidence "as understood by those versed in the field of law enforcement." United States v. Cortez, 449 U.S. 411, 418 (1981). Each case turns on its own facts.

In every case, however, the officer "is entitled to assess the facts in light of his experience" in detecting criminal activity. United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975). Law enforcement officers may perceive meaning in actions that appear innocuous to the untrained observer. Brown v. Texas, 443 U.S. 47, 52 & n.2 (1979). This is not to say that an officer may detain an individual on an "unparticularized suspicion or hunch." Terry, 392 U.S. at 27. While the necessary "level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence," the

6

Fourth Amendment requires "some minimal level of objective justification." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotations omitted).

B.

Applying the foregoing principles to the facts of this case, we conclude that Sergeant Fisher had reasonable suspicion to briefly detain Defendant. First, Sergeant Fisher knew that street dealers frequented the area to sell tar heroin. Sergeant Fisher also knew that illegal aliens and other transients congregated in the area. While the fact that Defendant was in an area known for criminal activity, standing alone, is not a sufficient basis for suspecting that Defendant was engaged in such activity, see United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996), "an area's disposition toward criminal activity is an articulable fact that may be considered along with more particularized factors to support reasonable suspicion." United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir. 1997) (internal quotations and citation omitted).

Second, and most importantly, Sergeant Fisher witnessed Defendant apparently soliciting a number of pedestrians. At least one pedestrian appeared to stop and speak with Defendant, but abruptly ended the encounter after detecting Sergeant Fisher. Defendant's conduct viewed in isolation may seem innocent enough. Perhaps he was just panhandling. The Supreme Court, however, has made clear in discussing the totality of

7

the circumstances that "wholly lawful conduct might justify the suspicion that criminal activity was afoot." Reid v. Georgia, 448 U.S. 438, 441 (1980).

Finally, Sergeant Fisher noticed that as compared to the man standing next to him, Defendant appeared quite uneasy. Nervousness is of limited significance in determining the presence of reasonable suspicion. See United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994). But it is not altogether irrelevant. See United States v. Peters, 10 F.3d 1517, 1521 (10th Cir. 1993). While most individuals will exhibit some signs of nervousness when approached by a police officer, Sergeant Fisher was able to contrast Defendant's behavior with that of the other individual who appeared calm, thus warranting further inquiry. Cf. Wood, 106 F.3d at 948.

Considered separately, any one of the facts known to Sergeant Fisher is not proof of any illegal conduct on the part of Defendant. However, we think the facts viewed in the context of the "whole picture" and taken together with Sergeant Fisher's training and experience, made Sergeant Fisher's suspicion that Defendant was engaged in criminal activity reasonable, thus justifying Defendant's brief detention.

Accordingly, the order of the district court denying Defendant's motion to suppress is AFFIRMED.