**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JON ALAURIA,

     Defendant-Appellant.

No. 98-2317
(D.C. No. CR-97-160-JC)
(Dist. N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BALDOCK, BRISCOE**, Circuit Judges, and **CROW**, District Judge.[**]

_____

Jon Alauria entered a conditional guilty plea to conspiracy to possess with the intent to distribute methamphetamine and amphetamine in violation of 21 U.S.C. § 846. He appeals the district court's denial of his motion to suppress the physical evidence that was seized from his vehicle during a traffic stop. He argues the district court erred in finding he was lawfully detained and voluntarily consented to the search. We exercise

_____

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citations of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Sam A. Crow, Senior United States District Judge for the District of Kansas, sitting by designation.

jurisdiction under 28 U.S.C. § 1291 and affirm.

I. BACKGROUND

Around 11:40 a.m. on February 12, 1997, New Mexico State Police Officer Eric Garcia was patrolling the Interstate 40 business loop through the City of Santa Rosa, New Mexico, when he observed in an eastbound lane a 1980 Jeep towing a trailer loaded with boxes and a motorcycle. Neither the female driver nor the male passenger was wearing a seat belt as required by state law. Officer Garcia turned his patrol car around and stopped the Jeep. As he approached the passenger side, Officer Garcia smelled a "very pungent" chemical odor that was consistent with chemicals used in the manufacture of methamphetamine. (Rec. vol. II, at 6). He asked them for their driver's licenses, vehicle registration, and proof of insurance. The passenger, Mr. Alauria, retrieved some information from the back seat and then stepped out of the car and handed over the documents. Officer Garcia continued to smell the chemical odor on the passenger's clothes.

Officer Garcia observed that Mr. Alauria initially appeared nervous, seemed relieved as he walked towards the rear of the trailer, but began "fidgeting around" while telling about their travel plans. Officer Garcia then spoke separately with the driver, Cindy Ericksten, who remained inside the Jeep. She did not make eye contact with Officer Garcia during their conversation. When he finished with her, Officer Garcia asked Mr. Alauria to have a seat in the Jeep while he checked their licenses and wrote the

citations.

Officer Garcia next called for Ms. Ericksten to step back to the trailer where he explained the citation to her and the options of either appearing and contesting it or paying the fine. Ms. Ericksten again avoided making eye contact with Officer Garcia. He then asked if she was transporting firearms, illegal contraband, heroin, cocaine, methamphetamine, or marijuana, and she answered "no." Ms. Ericksten signed the citation, and Officer Garcia advised that her driver's license would be returned when he finished with the passenger. Ms. Ericksten returned to the Jeep, and Officer Garcia asked the passenger to step back to the trailer.

Officer Garcia repeated the explanation to Mr. Alauria, had him sign the citation, and gave him the different documents and licenses. He asked if they were transporting narcotics, firearms, heroin, cocaine, methamphetamine, or marijuana. When Mr. Alauria answered, "no," Officer Garcia followed up with a request to search the jeep. Mr. Alauria nodded his head, answered "yes," and affirmatively waved his hand towards the jeep. Officer Garcia asked Mr. Alauria and Ms. Ericksten to step to the front of the Jeep.

Behind the passenger's seat, Officer Garcia found a gallon jug of acetone, which based upon his training and experience he knew to be a chemical used in the manufacture of methamphetamine. There also was a black bag partially opened which contained paperwork, clothes and two quarts of methyl ethyl ketone, which Officer Garcia also knew from his training and experience to be used as a chemical to mix methamphetamine.

When asked by Officer Garcia about the intended use of these chemicals, Mr. Alauria responded that he was stripping shelves at home. Officer Garcia replied that these chemicals were also used for mixing methamphetamine, and Mr. Alauria looked away, nodded, and grinned.

Officer Garcia walked around to the other side of the Jeep and pulled the ashtray open and found some small plastic bags of methamphetamine inside. Officer Garcia then placed Ms. Ericksten and Mr. Alauria under arrest. A further search of the Jeep resulted in the discovery of a box which contained approximately 8.43 pounds of methamphetamine.

After hearing the evidence at the suppression hearing, the district court ruled from the bench that the stop was legitimate, that the odor of chemicals and nervous behavior of Mr. Alauria and Ms. Ericksten provided Officer Garcia with reasonable suspicion to detain them long enough to ask for permission to search the Jeep, and that Mr. Alauria's consent to search was freely and voluntarily given.

## II. DISCUSSION

"When reviewing a district court's denial of a motion to suppress, we accept its factual findings unless clearly erroneous and view the evidence in a light most favorable to the government." *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999) (quotation omitted). It is for the district court to determine the credibility of witnesses, to give respective weight to the evidence, and to draw the reasonable inferences from the

evidence. *United States v. Villa-Chapparro*, 115 F.3d 797, 801 (10th Cir.), *cert. denied*, 522 U.S. 926 (1997). The ultimate determination of reasonableness is a question of law reviewable de novo. *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir.), *cert denied*, 120 S. Ct. 283 (1999).

Analogous to investigative detentions, routine traffic stops are analyzed under the principles stated in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). The reasonableness of an investigative detention is a dual inquiry: (1) "whether the officer's action was justified at its inception," and (2) whether the officer's action "was reasonably related in scope to the circumstances that first justified the interference." *United States v. Burch*, 153 F.3d 1140, 1141 (10th Cir. 1998) (quotation omitted); *see Terry*, 392 U.S. at 20. The defendant here does not take issue with Officer Garcia's initial stop of the Jeep to issue seat belt violations. We move to the second prong and the defendant's complaint that Officer Garcia unlawfully detained him by continuing to question him after issuing the citation.

"Generally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). It must be temporary, and its scope must be carefully tailored to its underlying justification. *United States v. Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir. 1997), *cert. denied*, 523 U.S. 1035 (1998); *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997). During a traffic stop,

an officer "may request a driver's license and vehicle registration, run a computer check, and issue a citation." *United States v. Hunnicutt*, 135 F.3d at 1349. An officer may ask preliminary questions regarding travel plans "as a matter of course without exceeding the proper scope of a traffic stop." *United States v. Hernandez*, 93 F.3d 1493, 1499 (10th Cir. 1996). Upon issuing the citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay or additional questioning. *United States v. Patten*, 183 F.3d at 1193; *United States v. Anderson*, 114 F.3d 1059, 1064 (10th Cir. 1997).

A longer detention for additional questioning is permissible under two circumstances: (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring; or (2) the initial detention changes to a consensual encounter. *United States v. Hunnicutt*, 135 F.3d at 1349. "[I]f the officer retains the driver's license, he or she must have reasonable and articulable suspicion to question the driver about drugs or weapons." *United States v. Turner*, 928 F.2d 956, 959 (10th Cir.), *cert. denied*, 502 U.S. 881 (1991). Finding that Officer Garcia did not return the driver's licenses before questioning about drugs and weapons and/or seeking consent to search, the district court here relied on the first circumstance of reasonable suspicion.

The burden rests with the government to prove the reasonableness of the officer's suspicion. *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998). "A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal

activity." *United States v. Hunnicutt*, 135 F.3d at 1349. "The law does not specify a minimum of factors necessary to constitute reasonable suspicion." *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (citation omitted). Arriving at reasonable suspicion is a process dealing with probabilities, not hard certainties, "'as understood by those versed in the field of law enforcement.'" *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Instead of closing their eyes to suspicious circumstances, officers may call on their own experience and training to judge facts and even "perceive meaning in actions that appear innocuous to the untrained observer." *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (citation omitted). On the other hand, "[i]nchoate suspicions and unparticularized hunches . . . do not provide reasonable suspicion." *United States v. Salzano*, 158 F.3d at 1111 (quotation omitted). "While the necessary level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, the Fourth Amendment requires some minimal level of objective justification." *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (quotation omitted).

We look at the factors enumerated at the suppression hearing, "both individually and in the aggregate, and determine whether, under the totality of the circumstances, those factors give rise to a reasonable suspicion of criminal activity." *United States v. Salzano*, 158 F.3d at 1111 (citation omitted). The court "judge[s] the officer's conduct in light of common sense and ordinary human experience." *United States v. Mendez*, 118

-7-

F.3d 1426, 1431 (10th Cir. 1997) (citation omitted). "This approach is intended to avoid unrealistic second-guessing of police officers' decisions and to accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. Gutierrez-Daniez*, 131 F.3d at 941 (quotation omitted). Rather than pigeonholing each fact as either innocuous or suspicious, we look at the totality of the circumstances in determining whether reasonable suspicion justified a longer detention. *United States v. Mendez*, 118 F.3d at 1431.

The district court found that the odor of chemicals and the nervousness of Ms. Ericksten and Mr. Alauria provided Officer Garcia with reasonable suspicion. Nervousness alone is not sufficient to sustain reasonable suspicion, but it is relevant and may contribute to a reasonable suspicion. *United States v. Soto-Cervantes*, 138 F.3d 1319, 1324 (10th Cir.), *cert. denied*, 525 U.S. 853 (1998); *see United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999). The emanating odor of controlled substances provides reasonable suspicion, if not probable cause. *See, e.g., United States v. Hill*, 199 F.3d at 1148 (officer had "reasonable suspicion that criminal activity was occurring based upon the PCP smell emanating from Mr. Hill's bag"); *United States v. Ozbirn*, 189 F.3d at 1200 (smell of raw marijuana alone provided reasonable suspicion for further detention and questioning); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998) (odor of raw marijuana alone may provide probable cause to search bag), *cert. denied*, 119 S. Ct. 1483 (1999). "Cases generally require the officer to be able to link the smell to a

particular controlled substance or illegal activity." *United States v. Little*, 18 F.3d 1499, 1506 (10th Cir. 1994).

Officer Garcia's testimony links the odors to a particular controlled substance. He testified to smelling a "very pungent" or "strong" chemical odor emanating from the Jeep that he generally believed was consistent with a mixture of chemicals used in the manufacture of methamphetamine. (Rec. vol. II, at 6, 28, 30, and 41). The chemical smell was so strong that Officer Garcia detected the same smell on Mr. Alauria's clothes when he stepped outside of the Jeep. In arguing this is not enough for reasonable suspicion, Mr. Alauria principally relies on *United States v. Salzano*. The facts in *Salzano*, however, are distinguishable, as the officer there detected the odor of a possible masking agent but did not testify that the masking agent was commonly used by drug traffickers, that the odor was unexpectedly strong, or that the odor was uncommon for the time of the year (pine smell five days before Christmas). 158 F.3d at 1114. We find that the pungent odor of chemicals associated with the manufacture of methamphetamine and not commonly associated with otherwise innocent travel provided Officer Garcia with reasonable suspicion. We conclude that Officer Garcia lawfully detained the defendant for the brief period required to ask whether he was transporting contraband and whether he would consent to a search of the Jeep.[1]

---

[1]Mr. Alauria also contends that once Officer Garcia discovered the cans of acetone and methyl ethyl ketone (legally obtained substances) and heard his explanation for lawfully having them, the reasonable suspicion evaporated and no further detention was

The only issue remaining is whether Mr. Alauria's consent to search was voluntary.[2] "Consent to search may be voluntary even though the consenting party is being detained at the time consent is given." *United States v. Doyle*, 129 F.3d 1372, 1377 (10th Cir. 1997) (citation omitted); *see United States v. Dozal*, 173 F.3d 787, 796 (10th Cir. 1999). Voluntariness is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). A court makes this determination without presuming the consent was voluntary or involuntary. *United States v. Hernandez*, 93 F.3d at 1500. The burden is with the government to prove the consent was voluntary. *United States v. Patten*, 183 F.3d at 1194. "The government must show there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." *United States v. Hernandez*, 93 F.3d at 1500 (citations omitted). Because voluntariness is a question of fact, we accept the district court's finding unless it is clearly erroneous. *United States v. Davis*, 197 F.3d 1048, 1050 (10th Cir. 1999).

Relying on the video which showed Mr. Alauria to have waved his hand affirmatively in response to a question and on Officer Garcia's testimony about the same,

justified. This argument is flawed in that Officer Garcia discovered the chemicals after receiving Mr. Alauria's consent to search.

[2]Because Mr. Alauria was not unlawfully detained when Officer Garcia asked for consent to search, the government does not bear the heavier burden of proof necessary to validate a consent given after an illegal detention. *United States v. Hernandez*, 93 F.3d 1493, 1500 (10th Cir. 1996).

-10-

the district court found that Mr. Alauria voluntarily consented to the search of the Jeep. The district court noted that the record was devoid of any evidence indicating that the consent was not voluntary. The record affords no basis for disputing that the Mr. Alauria gave specific and unequivocal consent to search and that he understood what was being asked him.

Mr. Alauria emphasizes that Officer Garcia failed to advise him that he was free to leave or to refuse consent. We have said that the lack of such advice is relevant to the determination, but it is only one factor and is not dispositive. *United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir.), *cert. denied*, 525 U.S. 903 (1998); *see also United States v. Little*, 60 F.3d 708, 713 (10th Cir. 1995). Though a person being detained may experience "some degree of compulsion to acquiesce to an officer's request," *United States v. Soto*, 988 F.2d 1548, 1558 (10th Cir. 1993), there must be other evidence of duress or coercion, *see United States v. Flores*, 48 F.3d 467, 469 (10th Cir.), *cert. denied*, 516 U.S. 839 (1995). This case lacks any evidence of coercive threats, promises, inducements, deception, display of a weapon, use of a commanding manner or tone of voice, or the presence of more than one officer. The encounter occurred during the day along side a busy, public highway. Mr. Alauria did not attempt to withdraw consent or object to the search. We cannot conclude from the totality of circumstances established by the record that the district court clearly erred when it found voluntary consent.

III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the Mr. Alauria's motion to suppress.

Entered for the Court

Sam A. Crow
District Judge